COMBAT VETERANS FOR CONGRESS
POLITICAL ACTION COMMITTEE, *et al.*,

       Plaintiffs,

    v.

FEDERAL ELECTION COMMISSION

       Defendant.

Civil Action No. 11-2168 (CKK)

**MEMORANDUM OPINION**
(September 30, 2013)

Plaintiffs Combat Veterans for Congress Political Action Committee ("CVFC PAC" or "Committee") and David H. Wiggs, in his official capacity as CVFC PAC's Treasurer, bring this action against Defendant Federal Election Commission ("Defendant" or "Commission" or "FEC") seeking to set aside or modify Defendant's November 4, 2011 Final Determination purporting to find Plaintiffs liable for violating the reporting provisions of 2 U.S.C. § 434(a) and assessing fines against Plaintiffs totaling $8,690.00. Currently before the Court are Plaintiffs' [18] Motion for Summary Judgment and Defendant Federal Election Commission's [22] Motion for Summary Judgment. Upon consideration of the parties' submissions,[1] the relevant legal

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Pls.' Mot. for Summ. J., ECF No. [18] ("Pls.' MSJ"); Pls.' Mem. of P&A in Supp. of Pls.' Mot. for Summ. J., ECF No. [18-1] ("Pls.' Mem."); Def. Fed. Elec. Comm'n's Mot. for Summ. J., ECF No. [22] ("Def.'s MSJ"); Def. Fed Elec. Comm'n's Mem. in Supp. of its Mot. for Summ. J. and in Opp'n. to Pls.' Mot. for Summ. J., ECF No. [22-1] ("Def.'s Mem."); Pls.' Mem. of P&A in Further Supp. of its Mot. for Summ. J. and in Opp'n. to Def.'s Mot. for Summ. J., ECF No. [26] ("Pls.' Reply"); Def. Fed. Elec. Comm'n's Reply Mem. in Supp. of its Mot. for Summ. J., ECF No. [28] ("Def.'s Reply"); Joint Appendix, Administrative Record, ECF No. [29].

authorities, and the record as a whole, the Court GRANTS Defendant's [22] Motion for Summary Judgment, and DENIES Plaintiffs' [18] Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual Background

### 1. FECA's Administrative Fine System

The Federal Election Campaign Act of 1971, as amended and codified at 2 U.S.C. §§ 431-457, was enacted by Congress as part of a comprehensive system regulating the financing of federal election campaigns. The Act, as part of an extensive campaign finance regime, imposes significant requirements for public disclosure of contributions and expenditures made or received by political committees in connection with federal elections. 2 U.S.C. §§ 432-434. The Act also created the Federal Election Commission, an independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the Act. *See generally* 2 U.S.C. §§ 437c(b)(1), 437d(a), 437g. Congress empowered the Commission to "formulate policy with respect to" FECA, 2 U.S.C. § 437c(b)(1), and authorized it to make "such rules . . . as are necessary to carry out the provisions" of the Act. 2 U.S.C. §§ 437d(a)(8), 438(a)(8).

As part of the disclosure regime set up by FECA, political action committees, through their treasurers, must file periodic reports detailing the committee's receipts and disbursements. 2 U.S.C. §§ 434(a)-(b). The Commission is authorized under the statute to assess civil penalties for certain violations of the reporting provisions of the Act. 2 U.S.C. §§ 437g(a)(5)(A)-(B). FECA requires each political committee to have a treasurer, who must be designated on the committee's statement of organization, which is filed with the Commission. 2 U.S.C. §§ 432(a), 433(b)(4). The treasurer keeps and preserves records on behalf of the political committee, 2

U.S.C. § 432(c), (d), and signs and files reports with the Commission on behalf of the committee, 2 U.S.C. § 434(a)(1).

In 1999, Congress amended 2 U.S.C. § 437g(a)(4) to add a streamlined administrative fines system for filing and record-keeping violations. Congress authorized the Commission to assess civil money penalties for violations of FECA reporting requirements through "a simplified procedure for the FEC to administratively handle reporting violations." H.R. Rep. No. 106-295, at 11 (1999). The Commission promulgated regulations, effective July 14, 2000, implementing these amendments. *See* Administrative Fines, 65 Fed. Reg. 31,787 (May 19, 2001) (codified at 11 C.F.R. pt. 111 B). Under these regulations, the Commission makes an initial determination that it has "reason to believe" that a respondent has violated 2 U.S.C. § 434(a). If the Commission concludes that there is reason to believe that a violation has occurred, the Commission notifies the respondent of the Commission's findings. 11 C.F.R. § 111.32. The notification includes the factual and legal basis for the finding, the proposed civil money penalty, and an explanation of the respondent's right to challenge both the reason-to-believe finding and the proposed penalty. *Id.* Upon receipt of this notification, the respondent can either pay the penalty, *id.* §§ 111.33-111.34, or challenge the finding and the proposed penalty, *id.* § 111.35.

If a respondent chooses to challenge the Commission's reason-to-believe finding or the proposed penalty, the respondent must file a written response with supporting documentation within 40 days of the date of the Commission's finding. *Id.* § 111.35. The administrative fines procedures do not provide for an oral hearing before the Commission. A respondent's written challenge can be based upon: (1) factual errors, (2) inaccurate calculations of the penalty, or (3) a showing that the respondent used "best efforts" but "reasonably unforeseen circumstances . . . beyond the control of the respondent" prevented timely filing of the report at issue and the

respondent filed the report no later than 24 hours after the end of these circumstances. *Id.* § 111.35(b)(1)-(3).

Regarding the third potential basis for a challenge, the regulations make clear that the unforeseen circumstances beyond a filer's control that would satisfy the third basis for an administrative fines challenge are very limited. The regulations specify certain circumstances that are expressly not considered "reasonably unforeseen and beyond the control of the respondent": (1) negligence; (2) delays caused by committee vendors or contractors; (3) illness, inexperience, or unavailability of the treasurer or other staff; (4) committee computer, software, or Internet service provider failures; (5) a committee's failure to know the filing dates; and (6) a committee's failure to use filing software properly. *Id.* § 111.35(d). Acceptable circumstances include Commission computer and software failures, widespread disruption of information transmissions over the Internet not caused by any failure of the Commission's or respondent's computer systems or Internet service provider, and severe weather or other disaster-related incidents. *Id.* § 111.35(c).

Timely-filed challenges to the Commission's reason-to-believe finding are reviewed by the Commission's "Reviewing Officer," a Commission staff person who is not involved in the Commission's reason-to-believe finding. After considering the respondent's submission, together with the reason-to-believe determination and any supporting documentation, *id.* § 111.36(a)-(b), the Reviewing Officer submits a written recommendation to the Commission, *id.* § 111.36(e), which is also provided to the respondent, *id.* § 111.36(f). The respondent has ten days to file a written response to the recommendation. *Id.* § 111.36(f).

After receiving the Reviewing Officer's recommendation and any timely-filed additional response by the respondents, the Commission makes a final determination whether a violation of

2 U.S.C. § 434(a) by the respondent has occurred and whether to assess a civil money penalty under 11 C.F.R. § 111.37.  When the Commission makes a final determination, the statement of reasons for the Commission's actions will, unless otherwise indicated by the Commission, consist of the reasons provided by the Reviewing Officer for the recommendation approved by the Commission.  11 C.F.R. § 111.37(d).  If the Commission makes an adverse determination and imposes a penalty, the respondent has 30 days in which to petition a federal district court for judicial review.  2 U.S.C. § 437g(a)(4)(C)(iii).

**2.  Plaintiffs and the Administrative Fines at Issue**

Plaintiff CVFC PAC is a non-partisan, non-connected political action committee registered with the Federal Election Commission.  Pls.' Mem. at 4.  CVFC PAC raises and disburses funds for the purpose of influencing federal elections.  *Id.*  Specifically, it endorses, contributes to, and otherwise supports the election of candidates who are combat veterans of the United States Military who meet ideological or policy standards determined by the organization. *Id.*  On October 19, 2009, CVFC PAC registered with the Commission as a non-connected political action committee by filing an FEC Form 1, Statement of Organization, pursuant to 11 C.F.R. § 102.1(d).  *Id.*  This Statement of Organization named Michael Curry as both Treasurer and Custodian of Records.  AF2355-AR076.[2]

Under FECA, as a political action committee, CVFC PAC, through its treasurer, must file periodic reports detailing its receipts and disbursements.  2 U.S.C. § 434(a)-(b).  In the run-up to

---

[2] Defendant filed three separate certified administrative records for each administrative fine at issue here.  *See* Administrative Record for Administrative Fine #2199, ECF No. [14]; Administrative Record for Administrative Fine #2312, ECF No. [15]; Administrative Record for Administrative Fine #2355, ECF No. [16].  In the Court's citations to the administrative record, "AF" refers to the administrative record associated with each fine, and "AR" refers to the page number in the referenced administrative record.

the 2010 federal election, Plaintiff, due to the actions of Mr. Curry, submitted a number of required reports to Defendant after the filing deadline.

The Committee's report for the third calendar quarter (the October Quarterly Report) was due to the Commission on October 15, 2010. *See* 2 U.S.C. § 434(a)(4)(A)(i). CVFC PAC's treasurer Mr. Curry did not file the report by the required deadline. Pls.' Mem. at 4. On October 19, 2010, Mr. Curry telephoned James R. McAllister, an analyst in the Commission's Reports Analysis Division, to let him know "that the committee failed to get their 2010 [October Quarterly Report] in on time because the group was completely 'swamped.'" AF2312-AR078. Mr. McAllister urged Mr. Curry to get the report in as quickly as possible. *Id.* In a subsequent call on November 3, 2010, Mr. Curry apologized for the delay in submitting the report and said he "would try to get it in by the end of the week." *Id.* On November 4, 2010, still having received no report, Defendant sent Mr. Curry a Notice of Failure to File regarding the October 2010 Quarterly Report, which stated that, "[t]he failure to timely file this report may result in civil money penalties, an audit or legal enforcement action." AF2199-AR035. On November 21, 2010, thirty-seven days after it was initially due, Mr. Curry electronically filed the 2010 October Quarterly Report. Pls.' Mem. at 5.

CVFC PAC's 12-Day Pre-General Election Report was due to the Commission on October 21, 2010. *See* 2 U.S.C. § 434(a)(4)(A)(ii). Mr. Curry did not file this report. Pls.' Mem. at 4. In addition, CVFC PAC's 30-Day Post-General Election Report was due to the Commission on December 2, 2010. *See* 2 U.S.C. § 434(a)(4)(A)(iii). Mr. Curry did not file that report either. Pls.' Mem. at 5. These reports were ultimately filed by Dan Backer, Assistant Treasurer of CVFC PAC, on January 11, 2011. Pls.' Mem. at 7; Def.'s Mem. at 8.

On December 13, 2010, Captain Joseph R. John, Chairman of CVFC PAC, called Mr. McAllister to alert him that Mr. Curry was leaving the Committee and to ask him how to change the treasurer. AF2199-AR022. Mr. McAllister explained that the Committee needed to submit a revised F1 Statement of Organization naming its new treasurer. *Id.* In a subsequent conversation on December 15, 2010, Mr. Curry called Mr. McAllister to ask about the process for resigning as treasurer. *Id.* Mr. McAllister stated that Mr. Curry would be considered the treasurer by the Commission until CVFC PAC submitted an F1 Statement of Organization naming a new treasurer. *Id.* On January 12, 2011, CVFC PAC filed an amended F1 Statement of Organization replacing Mr. Curry as treasurer with Plaintiff David Wiggs. AF2199-AR078-079.

In light of CVFC PAC's failure to timely file its reports, the Commission began administrative enforcement proceedings against the committee. On December 15, 2010, Defendant found Reason to Believe that CVFC PAC and Mr. Curry violated 2 U.S.C. § 434(a) by failing to timely file the October 2010 Quarterly Report by October 15, 2010. AF2199-AR008. The Commission made similar determinations with respect to the CVFC PAC's Pre-General Election Report and Post-General Election Report on March 11, 2011 and March 25, 2011, respectively. AF2312-AR020; AF2355-AR014. The Commission's Secretary and Clerk certified that the Commission had found reason to believe that CVFC PAC and its treasurer violated 2 U.S.C. § 434(a) by failing to file each report by the statutory deadline and had made preliminary determinations setting the civil money penalty for each violation. AF2199-AR002-004; AF2312-AR002-005; AR2355-AR003-004. These penalties were assessed in accordance with the Commission's fine schedule, set out in 11 C.F.R. § 111.43. *Id.* Pursuant to this schedule, plaintiffs were assessed penalties of $4,400 for one election sensitive report with

$75,000-$99,999.99 of activity; $3,300 for one election sensitive report with $50,000-$74,999.99 of activity and $990 for one non-election sensitive report with $25,000-$49,999.99 of activity. *Id.* The Commission notified Plaintiffs of its actions. AF2199-AR009-012; AF2312-AR026-029; AF2355-AR021-024.

In response to each of these determinations, Captain John sent letters to Defendant challenging the reason-to-believe findings by asserting that the conduct of CVFC PAC's former treasurer, Mr. Curry, made it impossible for CVFC PAC to timely file and that the PAC exercised its best efforts to file these reports as soon as practicable under the circumstances. AF2199-AR016-018; AF2312-AR030-032; AF2355-AR025-027.

On June 15 and 17, 2011, Dayna Brown, the FEC Reviewing Officer assigned to the proceedings against CVFC PAC, sent Plaintiffs the Recommendation of the Reviewing Officer regarding the reason-to-believe determinations for the late-filed reports. AF2199-AR044-046; AF2312-AR051-054. On June 24, 2011, counsel for CVFC PAC filed a written response arguing that the penalties should not be imposed because Mr. Curry was solely liable in his personal capacity for the conduct that resulted in the fines. AF2312-AR097-099. Subsequently, the FEC's Office of General Counsel submitted a Memorandum to Dayna Brown providing legal guidance on the disposition of these actions. AF2312-AR097-099. This memorandum stated that although the "former treasurer's actions do not absolve the Committee from liability for these violations," CVFC PAC's allegations "might justify pursuing [Mr. Curry] personally" and noted that the Commission "could consider Mr. Curry's actions as possible mitigating factors in determining the civil penalty for the Committee's violations." *Id.*

On October 12, 2011, the FEC's Chief Compliance Officer and the Reviewing Officer made a Final Determination Recommendation to the Commission for CVFC PAC's three late

filings. AF2312-AR106-108. This report recommended that the Commission find that CVFC PAC and its current treasurer David Wiggs, in his official capacity, violated 2 U.S.C. § 434(a) and assess penalties of $4,400, $3,300 and $990 for each of the late-filed reports, respectively. *Id.* Two weeks later, on October 27, 2011, the Commission adopted these recommendations and imposed fines totaling $8,960 against CVFC PAC and Mr. Wiggs, in his official capacity as the committee's treasurer. AF2312-AR118.

Plaintiffs subsequently sought reconsideration of the Commission's decision, arguing that the Commission did not provide them with a hearing and neglected to consider that Mr. Curry should be solely liable for the fine or that his actions should at least mitigate the penalty against Plaintiffs. AF2312-AR128-129. They also argued that the Commission's action raised various Constitutional concerns. Plaintiffs' request for reconsideration was ultimately denied by the Commission on December 9, 2011. AF2312-AR139.

## B. Procedural Background

On December 7, 2011, Plaintiffs sought review of the Commission's adverse determination pursuant to 2 U.S.C. § 437g(a)(4)(C)(iii). *See* Complaint, ECF No. [1]. On June 7, 2012, Plaintiffs filed for Summary Judgment. In their [18] Motion for Summary Judgment, Plaintiffs raised for the first time issues relating to the voting procedures used by the Commissioners at the reason-to-believe and final determination stages of the administrative fine process. *See* Pls.' Mem. at 1-2, 14-20. Plaintiffs made these claims based on copies of the ballots provided to them by the Commission two days prior to filing the motion for summary judgment. *See* Pls.' MSJ, Decl. of Dan Backer. These ballots are not contained in the administrative record filed with the Court, but are appended as exhibits to Plaintiffs' Motion for Summary Judgment. *See id.*, Exhibits 1-3 (ballots of Commission voting). On June 25, 2012,

Plaintiffs filed an amended complaint adding its contentions regarding allegedly improper voting procedures by the Commission. *See* Amended Complaint, ECF No. [20]. On July 9, 2012, Defendant filed its own [22] Motion for Summary Judgment.

## II. LEGAL STANDARD

The parties have cross-moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The Administrative Procedure Act, 5 U.S.C. §§ 701-706 sets out the standard of review for final agency adjudications brought under 2 U.S.C. § 437g(a)(4)(C)(iii). *Cooksey v. Federal Election Comm'n*, No. 04-cv-1152, 2005 WL 1630102, at *2 (W.D. La. June 9, 2005) (citing *Miles for Senate Comm. v. Federal Election Comm'n*, No. 01-cv-83, 2002 WL 47008 (D. Minn. Jan. 9, 2002). "[W]hen a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "summary judgment is simply the procedural vehicle for asking the court to decide, on the basis of the administrative record, the legal question of whether an agency reasonably could have

found the facts as it did." *Cunningham v. Federal Election Comm'n*, No. IP-01-0897, 2002 WL 31431557, at *3 (S.D. Ind. Oct. 28, 2002).

A reviewing court can set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C).

An agency's decision may be arbitrary or capricious if any of the following apply: (i) its explanation runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise; (ii) the agency entirely failed to consider an important aspect of the problem or issue; (iii) the agency relied on factors which Congress did not intend the agency to consider; or (iv) the decision otherwise constitutes a clear error of judgment. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1118 (D.C.Cir.2010). This standard of review is highly deferential to the agency; a court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings." *Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 422 (1983). Plaintiffs, as the party challenging the agency action, bear the burden of proof. *Abington Crest Nursing & Rehab. Ctr. v. Sebelius*, 575 F.3d 717, 722 (D.C.Cir.2009) (*citing City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C.Cir.2002)). In assessing the merits of Plaintiffs' challenge, the Court begins with the presumption that the Commission's actions were valid. *Grid Radio v. Fed. Commc'ns Comm'n*, 278 F.3d 1314, 1322 (D.C.Cir.2002).

In addition, "[a]s a general matter, an agency's interpretation of the statute which that agency administers is entitled to *Chevron* deference." *Fox v. Clinton*, 684 F.3d 67, 75

(D.C.Cir.2012) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)). In the first step of the *Chevron* analysis, the Court reviews the statute *de novo* to determine whether or not the statute is ambiguous. *Id.* at 842-43. If the statute is ambiguous, the Court then must defer to the agency's interpretation of the statute unless it is "manifestly contrary to the statute." *Id.* at 844. Thus, the inquiry for the Court under the second step of *Chevron* is whether the agency's interpretation of Congress' instructions is reasonable. The Court's inquiry under the second step of *Chevron* "overlaps with [the Court's] inquiry under the arbitrary and capricious standard." *Am. Fed'n of Gov't Employees, AFL-CIO, Local 446 v. Nicholson*, 475 F.3d 341, 345-46 (D.C. Cir. 2012) "Whether a statute is unreasonably interpreted is close analytically to the issue whether [sic] an agency's actions under a statute are unreasonable." *Gen. Instrument Corp. v. Fed. Commc'ns Comm'n*, 213 F.3d 724, 732 (D.C.Cir.2000).

### III. DISCUSSION

Plaintiffs argue that the Commission's determination and corresponding imposition of a fine of $8,960 is invalid for a number of reasons. First, they argue that the Commission lacked the authority to fine CVFC PAC and its current treasurer because the former treasurer of CVFC PAC, Mr. Curry, is solely liable in his personal capacity for failing to file the reports in question. Pls.' Mem. at 20-23. They next argue that, even if CVFC PAC and its current treasurer could be held liable, the Commission's failure to pursue Mr. Curry was arbitrary and capricious. *Id.* at 23-27. Plaintiffs also argue that the Commission's failure to mitigate the penalties against Plaintiffs due to Mr. Curry's actions was an abuse of discretion in violation of the APA. *Id.* at 31-33. Failing this, they contend that the regulation limiting the acceptable excuses for failure to file a disclosure report is unnecessarily narrow, and facially arbitrary and capricious in violation of the APA. *Id.* at 33-35. Plaintiffs also allege a variety of constitutional claims, contending that the fines imposed violate the Excessive Fines Clause of the Eighth Amendment, the Due Process

Clause, and the First Amendment. *Id.* at 35-36. Plaintiffs also argue that they were entitled to an in-person hearing before the Commission prior to any adverse ruling. *Id.* at 36-42. Finally, Plaintiffs raise a related set of procedural objections to the Commission's voting practices at the reason-to-believe and final determination stages of these proceedings, arguing that these improper procedures render the Commission's actions against them invalid. *Id.* at 14-20. The Court addresses each of these objections to the Commission's actions below.

### A. The Commission's Authority to Fine the Committee and its Current Treasurer.

Plaintiffs first argue that the Commission exceeded its statutory and regulatory authority in fining Plaintiffs for the failure to file the disclosure reports at issue. Pls.' Mem. at 20-23. Instead, Plaintiffs contend that Mr. Curry, the Committee's treasurer at the time the three late reports were due, is *solely* responsible for the violations and any civil money penalties. *Id.* Plaintiffs claim that under the applicable statutory and regulatory regime, committee treasurers alone are required to file FECA reports and that "Congress did not impose reporting obligations on political committees themselves." *Id.* at 20. As support for their position that Mr. Curry should be solely responsible for the late-filed reports, Plaintiffs point to various regulations and internal agency documents emphasizing the *possibility* of personal liability for a committee treasurer. *Id.* at 20-23. In support of this argument, Plaintiffs also make a somewhat broader argument – not grounded in statutory or regulatory text – that fining the Plaintiffs in this case would be contrary to "the public interest and sound public policy" because it punishes the wrong party. *Id.* at 27-31. According to Plaintiffs, if the fine against CVFC PAC and its current treasurer is allowed to stand, "[t]reasurers could be intentionally derelict and negligent in carrying out their statutory duties, abruptly resign from their position with their political

committees, and not face any consequences for their reckless and perhaps even criminal conduct." *Id.* at 30.

This Court finds Plaintiffs' argument that political committees and committee treasurers in their official capacity may not be held liable for late-filed reports unavailing. Under the text of FECA, political committees like CVFC PAC are clearly required to file periodic reports disclosing their receipts and disbursements. *See* 2 U.S.C. § 434(a)(4) ("All political committees other than authorized committees of a candidate shall file [the required reports]"). Committee treasurers are required, among other responsibilities, to file and sign these committee disclosure reports. *See* 2 U.S.C. § 434(a)(1) ("Each treasurer of a political committee shall file reports of receipts and disbursements in accordance with the provisions of this subsection. The treasurer shall sign each such report."). The implementing regulations similarly place the obligation for filing on the committee and its treasurer. *See* 11 C.F.R. § 104.5(c) ("each political committee that is not the authorized committee of a candidate must file either . . .").

Pursuant to these provisions, when the Commission makes a determination in an enforcement matter under 2 U.S.C. § 437g(a), its practice is to name both the political committee and its current treasurer in his or her official capacity as respondents. The Commission names the current treasurer in addition to the committee because "political committees are artificial entities that can act only through their agents, such as their treasurers . . . Due to these circumstances, identifying a live person who is responsible for representing the committee in an enforcement action is particularly important." Statement of Policy Regarding Treasurers Subject to Enforcement Proceedings ("Treasurer Policy"), 70 Fed. Reg. 3 (Jan. 3, 2005). As the Commission has explained, the practice of naming the current treasurer in his or her official capacity emphasizes that "the Commission is pursuing the official position (and therefore, the

entity), not the individual holding the position." *Id.* at 6 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). When the committee treasurer changes during the course of an administrative fine proceeding, as it did here, the Commission substitutes the new, successor treasurer in his or her official capacity, just as courts substitute government officials as parties in suits against a government.

Notwithstanding this text and practice, Plaintiffs argue that the treasurer responsible for the violations is *personally and exclusively* liable for the failure to file disclosure reports, and that no liability exists for the committee or its current treasurer in his official capacity. Pls.' Mem. at 20-23. This argument strains credulity. Admittedly, Plaintiffs cite to a bevy of authorities stating that the Commission has the authority to pursue a treasurer in his personal capacity. *See, e.g.,* 11 C.F.R. § 104.14(d) ("Each treasurer of a political committee . . . shall be personally responsible for the timely and complete filing of the report or statement and for the accuracy of any information or statement contained in it."); 11 C.F.R. § 114.12 ("Notwithstanding the corporate status of the political committee, the treasurer remains personally responsible for carrying out their respective duties under the Act."). However, none of the authorities cited by Plaintiffs *preclude* the Commission from proceeding against both a committee and its current treasurer in his official capacity for a violation. Although the Commission might conclude in a particular case that a treasurer should be held personally liable due to particularly willful or reckless action in failing to file reports – as the provisions cited by Plaintiffs point out – such a finding would by no means bar a simultaneous action against the committee itself and the treasurer in his official capacity. The mere fact that a committee treasurer may be held liable in his personal capacity does not establish that FECA assigns no simultaneous liability to committees and treasurers in their official capacity. Indeed, the clear

text of FECA indicates the committees themselves are the parties required to file reports. Moreover, the Commission's practice and regulations indicate that liability for committees and treasurers in their official capacity is the rule, rather than the exception.

Although neither party invokes *Chevron*, the Court concludes that the analysis supports the Commission here. The text of 2 U.S.C. § 434(a)(4) clearly imposes a reporting requirement on political committees. *Id.* ("All political committees other than authorized committees of a candidate shall file [the required reports]"). Similarly, 2 U.S.C. § 434(a)(1) places the responsibility for reporting on treasurers, noting that "[e]ach treasurer of a political committee shall file reports of receipts and disbursements in accordance with the provisions of this subsection. The treasurer shall sign each such report." Yet, in so many words, Plaintiffs appear to argue that these provisions unambiguously favor their position. Pls.' Reply at 18. They claim that § 434(a)(4) does not place liability on committees themselves because subheading (a) is entitled "Receipts and disbursements *by treasurers* of political committees; filing requirements." *Id.* (emphasis added). The Court is skeptical that such a heading suffices to render the text unambiguously supportive of Plaintiffs' position, given that other sub-sections under subheading (a) speak directly to treasurer responsibilities and subsection (a)(4) can be seen as an elaboration on the portion of the heading referring to "filing requirements." *See* 2 U.S.C. §434(a)(1). Indeed, the Court is more inclined to accept Defendant's position that the statute clearly imposes reporting responsibility on committees. Def.'s Mem. at 22. Nevertheless, even if the statute is ambiguous, under *Chevron*, the Court must defer to the agency interpretation unless it is "manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Here, the Commission's view plainly is not "manifestly contrary" to the provision at issue. Similarly, the statute clearly speaks to the responsibility of the treasurer to file reports. The Court cannot conclude that the

Commission's reading of this term as referring to the treasurer in his official capacity is plainly unreasonable. As discussed, the Commission pursues treasurers in their official capacity as agents of the committee. *See* 70 Fed. Reg. 3 ("By virtue of their authority to disburse funds and file disclosure reports and to amend those reports, treasurers of committees are in the best position to carry out the requirements of a conciliation agreement such as paying a civil penalty, refunding or disgorging contributions, and amending reports.")

This conclusion as to the reasonableness of the Commission's reading is unaffected by Plaintiff's broader policy argument that Committees should not be held responsible for the actions of their delinquent former treasurers. *See* Pls.' Mem. at 27-31. Such a contention finds an answer in basic principles of the law of agency, which holds a principal liable for the acts of its agent if due to the principal's inadequate supervision. *See* Restatement (Third) of Agency § 7.03 (describing principal's responsibility for the actions of its agent). Here, the Committee appointed Curry, and had the responsibility to supervise him, as its agent. It cannot now escape its statutory responsibilities when it failed to ensure that he was carrying out his duties.[3]

In short, the Court cannot conclude that Congress intended to impose liability exclusively on treasurers in their personal capacity, to the exclusion of committees and current treasurers in their official capacity. Plaintiffs cite no authority for the proposition that delinquent former treasurers should be held *solely* liable in their personal capacity for reporting violations to the exclusion of committees and their current treasurers. Moreover, the statutory text places the

---

[3] The Court finds unavailing Plaintiffs' protestations that a treasurer is more accurately described as a principal simply because of his or her crucial role in the functioning of a committee. *See* Pls.' Reply at 19 ("This is not some mere functionary or agent as the FEC would now claim, but that of the principal or master that black letter law squarely places at the center of the campaign finance and political committee system."). As Defendant points out, despite the important responsibilities of the committee treasurer, he or she is still a committee designee who carries out actions on behalf of the committee. *See* Def.'s Reply at 6.

burden for reporting on committees and treasurers. And even if this text is ambiguous, the Commission's interpretation is reasonable and entitled to this Court's deference.

**B. The Commission's Failure to Pursue Curry in His Personal Capacity.**

Plaintiffs next argue that even if the committee and its current treasurer *could* be held liable, the agency's failure to take enforcement action against Mr. Curry was "arbitrary, capricious, and otherwise contrary to law." Pls.' Mem. at 23-27. As Plaintiffs note, the Commission has stated that "when information indicates that a treasurer has knowingly and willfully violated a provision of the Act or regulations, or has recklessly failed to fulfill duties specifically imposed on treasurers by the Act, or has intentionally deprived himself or herself of the operative facts giving rise to the violation, the Commission will consider the treasurer to have acted in a personal capacity and make findings (and pursue conciliation) accordingly." Pls.' Mem. at 23-24 (quoting 70 Fed. Reg. 3). Plaintiffs argue that Mr. Curry's failure to timely file the required reports was a knowing, willful, and/or reckless violation of the legal reporting requirements, rendering him personally liable for any fines imposed for the late reporting. They argue that the Commission acted arbitrarily and capriciously by not exercising its discretion to consider the personal liability of Curry.

As an initial matter, this suit is not the proper vehicle for Plaintiffs to challenge the Commission's failure to take action against Mr. Curry. While "[j]udicial review is available under FECA to complainants dissatisfied with the FEC's decisions not to investigate," *Nader v. Federal Election Comm'n*, 823 F.Supp.2d 53, 65 (D.D.C. 2010), such review is pursuant to 2 U.S.C. § 437g(a)(8)(A) which sets out a specific process for challenging FEC failures to act on a complaint. Here, Plaintiffs do not contend that they filed a complaint against Mr. Curry pursuant to 2 U.S.C. § 437g(a)(1), which would entitle them to judicial review of FEC inaction on such

complaint in this Court. *See* 2 U.S.C. § 437g(a)(8)(A) ("Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by failure of the Commission to act on such complaint . . . may file a petition with the United States District Court for the District of Columbia."). *See also Citizens for Responsibility and Ethics in Washington v. Federal Election Comm'n*, 799 F.Supp.2d 78, 80-81 (D.D.C. 2011) (describing the "timeline and legal standard" for review under 2 U.S.C. § 437g(a)(8)(A)).

Moreover, *even if* this suit were the proper vehicle to challenge the Commission's failure to pursue Mr. Curry in his personal capacity – which again, it is not – Plaintiffs' claims still lack merit. "The FEC has broad discretionary power in determining whether to investigate a claim, and whether to pursue civil enforcement under [FECA]." *Akins v. Federal Election Comm'n*, 736 F.Supp.2d 9, 21 (D.D.C. 2010). *See also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (noting that the decision to not enforce "often involves a complicated balancing of a number of factors which are particularly within [the agency's] expertise" including "whether a violation has occurred" "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all."). As other courts of this district have recognized, the FEC enjoys "considerable prosecutorial discretion" and "its decisions to dismiss complaints are entitled to great deference . . . as long as it supplies *reasonable grounds*." *Nader*, 823 F.Supp.2d at 65 (emphasis added).

Here, the Commission considered Mr. Curry's potential liability, and has supplied reasonable grounds for its failure to prosecute him in his personal capacity. Commission staff advised that a suit against Mr. Curry might be worth pursuing, but also noted that if the

Commission wished to do so, it would need to bifurcate the matter and initiate a separate enforcement action to consider the issue. AF2312-AR107; AF2355-AR100. Moreover, the FEC's Office of General Counsel also indicated that it did not believe the facts warranted such a course of action, concluding that:

> [T]he Committee's allegations against Mr. Curry are consistent with an individual who has resigned or is transitioning out of office. They note that Mr. Curry did not prevent the Committee from filing its reports or appointing a new treasurer and that his contacts with RAD asking questions about the reports were not consistent with a deliberate effort to prevent the timely filing of the reports.

AF2199-AR103; AF2312-AR108; AF2355-AR101. In light of the great deference accorded to the FEC's decisions not to prosecute, the Court cannot conclude the agency abused its discretion in choosing not to pursue Mr. Curry in his personal capacity for willful or reckless failure to file reports. "The FEC is in a better position than [Plaintiffs] to evaluate the strength of [Plaintiffs'] complaint, its own enforcement priorities, the difficulties it expects to encounter in investigating [Plaintiffs'] allegation, and its own resources." *Nader*, 823 F.Supp.2d at 65.[4]

### C. The Commission's Failure to Mitigate Plaintiffs' Fines.

In a similar vein, Plaintiffs argue that the Commission either failed to exercise its discretion or abused its discretion in refusing to mitigate the fine against Plaintiffs due to the misconduct and personal liability of Mr. Curry. Pls.' Mem. at 31-33. They argue that CVFC PAC and its current officials used their best efforts to file the required reports as soon as practicable following the malfeasance of its former treasurer. As support for this contention, Plaintiffs point to statements from Commission staff that "Mr. Curry's actions could be considered as possible mitigating factors in determining the civil penalty for the Committee's violation." Pls.' Mem. at 31 (quoting AF2355-AR100). As discussed, 11 C.F.R. § 111.35(b)(3)

---

[4] Moreover, as discussed *supra*, even if the Commission had pursued Mr. Curry in his personal capacity, such an action would not have absolved the Plaintiffs of their own liability.

allows parties to challenge fines on the grounds that "[t]he respondent used best efforts to file in a timely manner in that: (i) The respondent was prevented from filing in a timely manner by reasonably unforeseen circumstances that were beyond the control of the respondent; and (ii) The respondent filed no later than 24 hours after the end of these circumstances."  Plaintiffs argue that "[t]he malfeasance of the treasurer was not reasonably foreseeable and was beyond the control of the plaintiffs and, therefore, liability should not have been imposed on the plaintiffs and/or the fines should have been remitted in whole or in part."  Pl.'s MSJ at 33.

The APA provides a cause of action for federal courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Here, neither party contends that the failure to mitigate or eliminate the penalties at issue is "agency action . . . committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  *See Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) ("Over the years, we have read §701(a)(2) to preclude judicial review of certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion.") (internal quotation marks omitted).  Accordingly, the Court applies the standard of review applicable to claims under §706(2)(A).  *See Eagle Broadcasting Group, Ltd. v. FCC*, 563 F.3d 543, 551 (D.C. Cir. 2009) ("[§706(2)(A)] is the APA's catch-all provision governing the scope and standards of review, and the courts rarely draw any meaningful distinctions between acts that are arbitrary, capricious, or an abuse of discretion.  Arbitrary, capricious or an abuse of discretion review under §706(2)(A) is now routinely applied by the courts as one standard under the heading of arbitrary and capricious review.") (internal citations and quotation marks omitted).

Plaintiffs, as the party challenging agency action, must prove that the Commission's decision not to mitigate was arbitrary and capricious. *City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002). As noted, an agency's decision may be arbitrary and capricious if: (i) its explanation runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise; (ii) the agency entirely failed to consider an important aspect of the problem at issue; (iii) the agency relied on factors which Congress did not intend the agency to consider; or (iv) the decision otherwise constitutes a clear error of judgment. *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In assessing the merits of Plaintiffs' challenge, the Court begins with the presumption that the Commission's action was valid. *Grid Radio v. FCC*, 278 F.3d 1314, 1322 (D.C. Cir. 2002). So long as it has some rational basis, the Court is bound to uphold the decision. *Hosp. of Univ. of Pa. v. Sebelius*, 634 F.Supp.2d 9, 13 (D.D.C. 2009) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

Here, the Commission's decision not to mitigate Plaintiffs' penalties easily satisfies this standard. 11 C.F.R. § 111.35(d) specifies certain circumstances that are expressly not considered "reasonably unforeseen and beyond the control of the respondent": (1) negligence; (2) delays caused by committee vendors or contractors; (3) illness, inexperience, or unavailability of the treasurer or other staff; (4) committee computer, software, or Internet service provider failures; (5) a committee's failure to know the filing dates; and (6) a committee's failure to use filing software properly. Acceptable circumstances include Commission computer and software failures, widespread disruption of information transmissions over the Internet not caused by any failure of the Commission's or respondent's computer systems or Internet service provider, and

severe weather or other disaster-related incidents.  11 C.F.R. § 111.35(c).  Here, the Commission concluded that, pursuant to this regulation, Plaintiffs did not qualify for mitigation or reduction of their fines.  *See* AF2355-AR046 ("While the challenges raise a best efforts defense, such a defense will not succeed if it is based on any of the circumstances listed at 11 C.F.R. § 111.35(d).").  Basing their decision not to mitigate on this regulation, rather than any equitable considerations, the Court cannot conclude that the Commission's decision lacked a rational basis and constituted an abuse of discretion.  "Plaintiffs, in effect, are asking this Court to exercise its own judgment and rehear Plaintiffs' [case before the Commission].  This is precisely the type of second-guessing that this Court must avoid."  *Cox for U.S. Senate Committee, Inc. v. Federal Election Comm'n*, No. 03-C-3715, 2004 WL 783435, at *5 (N.D. Ill., Jan. 22 2004) (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981)).

Plaintiffs next argue that if the Commission did not abuse its discretion in applying 11 C.F.R. 111.35 to them, the regulation is arbitrary and capricious on its face.  Pls.' Mem. at 33-35.  In essence, Plaintiffs argue that this regulation is unreasonably narrow because it excludes action like the conduct at issue here, where the failure to file was due to the actions of a delinquent treasurer.  Plaintiffs also note that this regulation is over-inclusive and under-inclusive because it excuses "foreseeable" events like severe weather, but does not excuse "unforeseeable" events like a computer virus on a committee's computers.  *Id.* at 34.

Under the highly deferential standard required here, the Court cannot conclude that the best efforts regulation is arbitrary and capricious on its face.  The Commission has put forth a reasonable explanation for the narrowness of the rule.  Def.'s Reply at 4.  The regulation implements 2 U.S.C. § 432(i), which states that "[w]hen the treasurer of a political committee shows that best efforts have been used to obtain, maintain, and submit the information required

by this Act for the political committee, any report or any records of such committee shall be considered in compliance with this Act."   The Commission argues that if recklessness and negligence on the part of a treasurer – of the sort at issue here – were to qualify as "best efforts", then the exception would swallow the rule, and almost all late filings would be excusable.  Def.'s Reply at 4.  Similarly, they contend that, a committee's negligence in managing its agent – its treasurer – should not entitle it to claim it used its "best efforts" to file its reports.  *Id.* Accordingly, Plaintiffs have failed to meet their burden of proof, and their claim that this regulation is arbitrary and capricious is rejected.

**D.  Plaintiffs' Eighth Amendment Claim.**

Plaintiffs argue that the fines imposed are excessive in violation of the Eighth Amendment's Excessive Fines Clause, citing *United States v. Bajakajian,* 524 U.S. 321 (1998).[5] Pls.' Mem. at 35-36; Pls.' Reply at 26-27.  In *Bajakajian,* the Supreme Court, considering a fine imposed against an illegal exporter of currency, held that a punitive fine violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the offense that it is designed to

---

[5] At various points, Plaintiffs describe this excessive fines contention as a Due Process argument. Because of Plaintiffs' citation to *Bajakajian* and *Cox*, both of which involve the Eighth Amendment's Excessive Fines Clause, the Court considers this argument as more properly addressed under this provision of the Eighth Amendment, which Plaintiffs also mention in passing.  The Court is uncertain whether Plaintiffs allege a separate free-standing Due Process claim that imposing liability upon CVFC PAC and its current treasurer for Mr. Curry's failure to file the required disclosure reports would violate the Due Process Clause of the Fifth Amendment.  Plaintiffs provide only a single sentence on this point, noting that "[t]he unlawful finding of liability and imposition upon the plaintiffs of fines totaling $8,960 for conduct they did not commit and for which the underlying law does not hold them responsible violates Due Process . . . ."  Pl.'s Mem. at 35.  As an initial matter, as discussed *supra*, this Court has concluded that the Commission properly held Plaintiffs liable for Mr. Curry's failure to file reports pursuant to its statutory authority.  Accordingly, the finding of liability and imposition of fines upon Plaintiffs is not "unlawful" and the "underlying law does . . . hold them accountable" for such failure to file.  Moreover, even if this were not the case, Plaintiffs provide no further explanation and cite no case law to explain how such action would offend the substantive component of the Due Process Clause.  In the absence of a clearer and more developed argument from Plaintiffs, the Court will not lightly find a Constitutional violation.

punish. 524 U.S. at 334. Plaintiffs argue that the $8,960 total fine here is excessive in light of the fact that it would force CVFC PAC, with a bank balance of only $3,764.29 as of June 30, 2012, to shut down. Pls.' Reply at 26. However, as this Court has noted, "ability to pay is not a component of the Eighth Amendment proportionality analysis." *Duckworth v. United States ex rel. Locke*, 705 F.Supp.2d 30, 48 (D.D.C. 2010). *See also United States v. Emerson*, 107 F.3d 77, 81 (1st Cir. 1997) ("[T]he 'touchstone' is the value of the fine in relation to the particular offense, not the defendant's means."). Moreover, as the D.C. Circuit has explained, in *Bajakajian*, "the Court was primarily concerned that the potential penalty for illegal export of currency would be indefinite and unlimited-and disproportionate to the offense-if the government could seize whatever amount of currency the unwitting "exporter" happened to be carrying when caught." *Grid Radio v. FCC*, 278 F.3d 1314, 1322 (D.C. Cir. 2002). "No such problem exists" in the case of a fixed statutory penalty where "the amount is neither indefinite nor unlimited." *Id.* Indeed, here, the fines are fixed by regulation, which incorporates statutorily required factors for computation of fines. *Compare* 11 C.F.R. § 111.43 *and* 2 U.S.C. § 437g(a)(4)(C)(i)(II). The Supreme Court has explained that the "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian,* 524 U.S. at 336. *See also Newell Recycling Co. v. United States Envtl. Prot. Agency,* 231 F.3d 204, 210 (5th Cir.2000) ("No matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment."). Accordingly, the Court finds no concerns as to the Excessive Fines Clause with the penalty here, involving a fixed fine in compliance with legislative guidelines.

Plaintiffs cite to *Cox*, 2004 WL 783435, at *13, as support for their claim that the fines at issue violate the Excessive Fines Clause. In *Cox*, the Northern District of Illinois, applying Seventh Circuit precedent, looked to four factors in determining whether a fine for late-filing a FECA disclosure report violated the Eighth Amendment: (1) Gravity of Plaintiffs' Violations, (2) Plaintiffs' Level of Culpability, (3) Harm Caused by Plaintiffs' Violation, and (4) Comparison of Fine to Gravity of Plaintiffs' Violations. *Id.* at *13-14. While the Court is skeptical that any of these factors favors Plaintiffs here, given the *Cox* court's conclusions that they did not favor a candidate raising an almost identical claim, it suffices to note that the *Cox* court concluded that "[b]ecause the fine assessed against Plaintiffs does not deviate from the Schedule [set out in the regulations], Plaintiffs' unsupported complaints do not establish that the fine is unconstitutionally excessive so as to justify the extraordinary step of overruling the legislature in this instance." *Id.* at *14. Accordingly, as this fine is neither indefinite nor unlimited, and is in compliance with statutory guidelines, the Court concludes that it does not offend the Excessive Fines Clause.

### E. Plaintiffs' First Amendment Claim.

Plaintiffs briefly argue that imposing $8,690 in fines would have a chilling effect on the exercise of CVFC PAC's political speech and associational rights under the First Amendment. Pls.' Mem. at 35-36. They argue that finding Plaintiffs guilty of violating federal election laws stigmatizes CVFC PAC and its current treasurer as lawbreakers and would discourage donors from making contributions to CVFC PAC or otherwise volunteering or associating with the committee. *Id.* at 35. They also argue that the imposition of these fines would reduce the amount of funds available to the PAC to make campaign contributions and expenditures in the exercise of its First Amendment rights. *Id.* at 36. Plaintiffs cite to no case law for this point

beyond stray citations to landmark campaign finance cases.  *See id.* (citing *Buckley v. Valeo*, 424 U.S. 1 (1976) *and Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010)).

The Supreme Court has repeatedly and consistently upheld FECA's disclosure regime (including in both cases cited by Plaintiffs), making an implicit judgment that the fine provisions do not offend the First Amendment on any of the grounds asserted by Plaintiff.  *See Buckley*, 424 U.S. 1, 64 (1976) (upholding FECA disclosure regime against constitutional challenge and noting that "[a]ny violation of these record-keeping and reporting provisions is punishable by a fine of not more than $1,000"); *Citizens United*, 558 U.S. at 371 (rejecting facial and as-applied challenge to disclosure requirements).   Indeed, the concerns identified by Plaintiffs – potential stigma and reduced funds – are present in any fine of any political committee.  Recognizing Plaintiffs' claims would cast doubt on the Commission's ability to fine any entity in violation of the disclosure provisions.   While the *Buckley* Court did caution that disclosure might become constitutionally problematic when donors are subject to threats of reprisal, no such allegations exist here.  *Buckley*, 424 U.S. at 71 (discussing *NAACP v. Alabama*, 357 U.S. 449 (1958)).   In the absence of a more serious and developed argument from Plaintiffs, the Court is reluctant to find a systemic First Amendment violation in a regime upheld by a long line of precedent.

### F.  The Commission's Failure to Provide Plaintiffs a Hearing.

Plaintiffs argue that the Commission acted unlawfully by making a final determination as to Plaintiffs' liability without providing them an in-person hearing before the Commission.   Pls.' Mem. at 36-42.  Plaintiffs argue that by denying them an in-person hearing, the Commission deprived them of the "opportunity to be heard" required by 2 U.S.C. § 437g(a)(4)(C)(ii).[6]  This

---

[6] Although a heading in Plaintiffs' brief refers to the denial of a hearing as a deprivation of Due Process, *see* Pl.'s Mem. at 36, the text of Plaintiffs' brief contains no substantive discussion of Constitutional Procedural Due Process requirements.  Plaintiffs fail to *even* invoke *Mathews v.*

provision states that "the Commission may not make any determination adverse to a person . . . until the person has been given written notice and an opportunity to be heard before the Commission." 2 U.S.C. § 437g(a)(4)(C)(ii). The Commission contends that Plaintiffs were provided the statutorily required "opportunity to be heard" through their written objections to the Commission's reason-to-believe findings. Def.'s Mem. at 32-25. The Commission considered these objections and responded to them in writing in making its Final Determination as to the penalties.

As Defendant notes, the statutory phrase "opportunity to be heard" does not necessarily require a hearing. *See, e.g.*, 2 U.S.C. § 1406 ("The parties . . . shall have a reasonable opportunity to be heard, through written submission and, in the discretion of the Board, through oral argument."); 7 U.S.C. § 93 (requiring agency to provide "hearings or reasonable opportunities to be heard"); *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005) ("The Court has afforded the parties the opportunity to be heard through their written submissions, which is sufficient to satisfy the [opportunity to be heard] requirement of Rule 37."); *Kister v. District of Columbia*, 229 F.R.D. 326, 329 (D.D.C. 2005) ("[T]he Court has afforded the defendants an opportunity to be heard through written memoranda.");

Under long-standing principles of administrative law, agencies are not required to adopt procedures beyond those mandated by statute. *See Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 543 (1978) (describing "the very basic tenet of

---

*Eldridge*, 424 U.S. 319 (1976) and its progeny, much less make any effort to show how the denial of a hearing in the FEC administrative fines context relates to the balance of factors that govern this determination. *See* 424 U.S. at 335 (requiring consideration in determination of what process is due of "the private interest that will be affected by the official action," "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.").

administrative law that agencies should be free to fashion their own rules of procedure."); *Nuclear Info. Resource Serv. v. Nuclear Regulatory Comm'n*, 969 F.2d 1169, 1174 (D.C. Cir. 1992) (holding that requiring agency to implement hearing procedures not specified in statute could "violate the Supreme Court's admonition in [*Vermont Yankee*] against the judicial fashioning of administrative procedures that neither Congress nor the agency has sanctioned."). Here, because the phrase "opportunity to be heard" can be interpreted to include not merely oral, but also written advocacy – and indeed, has been used by Congress to describe the latter – the decision about whether an in-person hearing is required is properly left to the agency. This Court will not impose procedural requirements on the Commission which are not mandated by statute.

## H. Plaintiffs' Challenges to the Commission's Voting Procedure.

Finally, Plaintiffs argue that the FEC sanctions are invalid because the Commission allegedly did not follow proper procedure in imposing civil money penalties on the Plaintiffs. Pls.' Mem. at 14-20. These claims are not properly before this Court because they have not been addressed by the agency. Def.'s Mem. at 24-25. "It is well understood that 'a reviewing court usurps an agency's function if it sets aside an administrative determination upon a ground not theretofore presented and deprives the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" *Coburn v. McHugh*, 679 F.3d 924, 931 (D.C. Cir. 2012) (quoting *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946)). Moreover, review of these issues would require the Court to look to matters not contained in the administrative record before the agency. Plaintiffs have alleged defects in the ballots used by the Commissioners, and have appended these ostensibly faulty ballots as exhibits accompanying their motion for summary judgment. *See* Pls.' Mem., Decl. of Dan Backer. These ballots are *not*

contained in the administrative record provided to the Court. As the Supreme Court has repeatedly cautioned, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (internal citations omitted). Here, the Court is extremely reluctant to rule on matters neither first presented to the agency nor contained in the administrative record submitted for review. In light of these considerations, these claims are not properly before this Court and will not be addressed.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's [22] Motion for Summary Judgment is GRANTED, and Plaintiffs' [18] Motion for Summary Judgment is DENIED. An appropriate Order accompanies this Memorandum Opinion.


Dated: September 30, 2013


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge